# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### APRIL SESSION, 1996



**FILED**

**December 10, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9506-CR-00176** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **SHELBY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. ARTHUR T. BENNETT** |
| **DARRYL J. BAILEY,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal - Murder Committed** |
| | ) | **during the Perpetration of a Robbery)** |

FOR THE APPELLANT:

MARVIN E. BALLIN
MARK E. MESLER
200 Jefferson Avenue, Suite 1250
Memphis, TN 38103

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

SARAH M. BRANCH
Assistant Attorney General
425 Fifth Avenue
Nashville, TN 37243

WILLIAM L. GIBBONS
District Attorney General

THOMAS D. HENDERSON
Assistant District Attorney
201 Poplar Avenue
Memphis, TN 38103

OPINION FILED _____

REVERSED AND REMANDED

JERRY L. SMITH, JUDGE

# OPINION

On September 23, 1994, a Shelby County jury convicted Appellant Darryl J. Bailey of murder committed during the perpetration of a robbery and sentenced him to life imprisonment. Appellant challenges his conviction, raising the following issues:

1) whether the evidence was sufficient to support his conviction; and
2) whether the trial court erred when it ruled that a statement of a co-defendant could not be introduced into evidence.

After a review of the record, we reverse the judgment of the trial court and remand for a new trial

## FACTS

Marcel Nugent testified that he spent the evening of October 9, 1992, with Earnest Norman at the apartment of a friend. Nugent testified that after he and Norman decided to leave the apartment, Nugent went out into the parking lot and got in Norman's car. When Norman came out of the apartment a few minutes later, two men out of a group of five said something to Norman and tried to hit him. Nugent then saw Norman run away from the men and the men began shooting at Norman. At this time, a Cadillac pulled into the parking lot and the driver got out. After the group of men went over to the Cadillac, Nugent got out of the car in order to escape, but his path was blocked and he got back into the car. Nugent testified that some of the men came back to the car, broke out the window, and pulled him out of the car. Nugent ran away, but the men chased him until he fell down. The men shot him three times and took his jacket, his

watch, and eighty dollars. After the men left, Nugent went back into the apartment to wait for an ambulance.

Earnest Norman testified that when he left the apartment and went to his car, two men from a group in the parking lot approached him and asked for money. Norman testified that he believed the men were trying to rob him. After one of the men struck Norman on the back of the head, Norman ran away. Norman heard several gunshots as he jumped a fence and ran to a gas station to call police. Norman testified that he heard more gunshots after he reached the pay phone at the gas station.

Terrence Pollard testified that on October 9, 1992, he was at an apartment at 1885 Winchester in Memphis. Several of his friends were also at the apartment, including Appellant, Andre Bland, Carlos Sanders, Charles Sanders, Robert Davenport, and Steve Davis. Pollard testified that this group left the apartment at the same time that Norman and Nugent were leaving the other apartment. Davis then hit Norman and Norman ran away. At this point, Pollard saw a Cadillac pull into the parking lot and he saw the driver get out and begin walking toward the apartments. Davis then said something to the driver, and the driver began walking back to the Cadillac. Bland and Appellant then shot at the driver and the driver began limping as he ran in back of the building. Pollard testified that he could see that both Appellant and Bland had guns in their hands. Bland and Appellant then followed the driver around the building and then Pollard heard more gunshots. When Appellant came back into sight, he had a gun "cocked in his hands" and he had blood on one hand.

Paramedic Kathleen Carson testified that she was called to the scene of the shooting at approximately 12:00 a.m. on October 10, 1992. When Carson arrived at the scene, she found Ontrain Sanders lying on the ground underneath a pickup truck. Carson testified that Ontrain Sanders had "a very large wound to his right thigh" and he was "going into severe shock." Ontrain Sanders died while he was being transported to the hospital.

Doctor Jerry Francisco testified that an autopsy of Ontrain Sanders revealed that he had sustained multiple gunshot wounds to the right thigh. Doctor Francisco estimated that either four or five bullets had hit Ontrain Sanders' leg and that he died as a result of a bullet tearing the femoral artery of his right thigh.

Officer Robert Moore of the Memphis Police Department testified that he arrived at the crime scene at approximately 12:30 a.m. on October 10, 1992. Officer Moore testified that there was a trail of splattered blood leading from the rear parking lot in back of 1885 Winchester to an area by a Ford Pickup behind a building at 3570 Cazassa. Officer Moore testified that he found a dollar bill, some loose change, and a check on the ground near the pickup. The money and the check were covered with blood and the check was made out to Ontrain Sanders.

Sergeant H. A. Ray of the Memphis Police Department testified that he interviewed Appellant on October 11, 1992. After Sergeant Ray advised Appellant of his rights, Appellant admitted that he was present when the shooting took place on October 10, 1992. Appellant stated that while he was waiting

-4-

outside of the apartment, he heard Davis and Davenport say that they were planning to rob Norman and Nugent when they came back outside. After Norman and Nugent came outside, Davis approached Norman and Norman ran. Davis then broke the car window and pulled Nugent out of the car. At this point, the Cadillac pulled into the parking lot and the driver got out. Appellant stated that the driver of the Cadillac was shot by Bland as he attempted to get back in his car. After the driver limped around the corner of the building, Bland ran around the corner and shot the driver five or six times. Appellant stated that he had tried to stop Bland from following the driver. Appellant stated that during this incident, Bland, Davis, and Carlos Sanders were the only ones with guns. Appellant also stated that Bland called him after the incident and said that he had killed the victim and that he was going to talk to the police.

Sergeant Ray testified that he took a second statement from Appellant on October 17, 1992. After he was advised of his rights, Appellant stated that he was with Bland on October 10, 1992, when Bland shot Ontrain Sanders as he attempted to get back into his Cadillac. Appellant stated that when Ontrain Sanders limped off, Appellant and Bland ran around the corner and saw Ontrain Sanders trying to hide under a truck. Appellant stated that at this point, he shot Ontrain Sanders twice in each leg with a black nine millimeter handgun. Immediately thereafter, Bland shot Ontrain Sanders once in the leg. Appellant stated that he was not trying to kill Ontrain Sanders when he shot him.

Darlene Williams and Diane Arnold testified that they had seen Appellant standing in the parking lot of the apartment building on October 9, 1992, and that he was holding a silver automatic handgun. Williams also testified that Bland had

tried to get Appellant to "take the charge for him because [Appellant] was a juvenile at the time."

Appellant testified that the first statement he gave to Sergeant Ray was a true statement, except that Davenport was the only one who had said that he was going to rob Norman and Nugent when they came outside. Appellant testified that after he gave his first statement, he received a call from Pollard in which Pollard told him that he would be killed if he did not "take the [murder] charge." Appellant testified that Bland also threatened to kill him if he did not confess to the murder. Appellant testified that Pollard and Bland told him what to say in his second statement. Appellant testified that he did not own a gun or have a gun with him on October 9 and 10, 1992.

**SUFFICIENCY OF THE EVIDENCE**

Appellant contends that the evidence was insufficient to support his conviction for murder committed during the perpetration of a robbery. We disagree. When an appellant challenges the sufficiency of the evidence, this Court is obliged to review that challenge according to certain well-settled principles. A verdict of guilty by the jury, approved by the trial judge, accredits the testimony of the State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Although an accused is originally cloaked with a presumption of innocence, a jury verdict removes this presumption and replaces it with one of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with Appellant to

demonstrate the insufficiency of the convicting evidence. Id. On appeal, "the [S]tate is entitled to the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." Id. (citing State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978)). Where the sufficiency of the evidence is contested on appeal, the relevant question for the reviewing court is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. Harris, 839 S.W.2d at 75; Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). In conducting our evaluation of the convicting evidence, this Court is precluded from reweighing or reconsidering the evidence. State v. Morgan, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, this Court may not substitute its own inferences "for those drawn by the trier of fact from circumstantial evidence." Id. at 779. The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

At the time of this offense, first degree murder was defined as "[a] reckless killing of another committed in the perpetration of, or attempt to perpetrate any . . . robbery," Tenn. Code Ann. § 39-13-202(a)(2) (1992), and robbery was defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a) (1992). When viewed in the light most favorable to the State, the evidence is sufficient for a reasonable jury to convict Appellant of murder committed during the perpetration of a robbery. First, Williams and Arnold both

testified that they saw Appellant with a silver gun standing in the apartment parking lot with his friends on October 9, 1992. Second, Appellant told the police in his first statement that he knew that Davis and Davenport were planning to rob Norman and Nugent when they came back outside. Although Appellant changed his account slightly when he testified at trial, he still admitted that he knew that Davenport was planning to rob the two men. Pollard testified that Appellant walked up to Norman's car after Nugent got in it. Pollard also testified that shortly thereafter, both Appellant and Bland shot at Ontrain Sanders when he attempted to get in his car and that they both chased Ontrain Sanders when he went in back of the building. Pollard testified that when Appellant came back into sight, he had a gun "cocked in his hands" and had blood on one hand. Appellant later confessed that he shot Ontrain Sanders four times. Next, Pollard testified that Appellant pulled Nugent out of the car and began fighting with him. Nugent was subsequently shot and robbed of his money, watch, and jacket. We hold that a reasonable jury could conclude from this evidence that Appellant pulled Nugent from the car, beat him, and then robbed him. A reasonable jury could also have concluded that Appellant was the one who shot and killed Ontrain Sanders. Further, the jury could have inferred from the fact that Ontrain Sanders' blood covered check and small change were found next to the pickup truck and that Appellant had blood on his hand when he came back from chasing Ontrain Sanders that Appellant had searched and robbed Ontrain Sanders after he shot him.

Appellant basically contends that this evidence is insufficient because it contains some inconsistencies. Specifically, Appellant notes that: 1) he stated in his confession that he shot Ontrain Sanders in both legs while the autopsy

revealed wounds to the right leg, 2) he claimed in his confession that he used a black gun while the witnesses testified that he had a silver gun, 3) Appellant and two witnesses stated that he had an automatic handgun while Pollard said that Appellant had a gun "cocked in his hand," and 4) Appellant stated in his confession that Davis pulled Nugent out of the car while Pollard testified that Appellant had pulled Nugent out. However, the fact that Appellant aimed at a particular spot on the victim's body while the victim was shot only in another part of his body does not indicate that Appellant did not inflict the wounds, the fact that there was confusion over the color or type of gun does not overcome the overwhelming evidence that Appellant had a gun on the night of the shooting, and the fact that Pollard and Appellant stated that different people had pulled Nugent out of the car does not automatically mean that Pollard was lying. At any rate, the credibility of the witnesses, the weight to be given their testimony, and the reconciliation of conflicts are matters entrusted exclusively to the trier of fact. Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978). Thus, Appellant's claim that the evidence is insufficient merely because it contains some contradictions has no merit.

## ADMISSIBILITY OF THE CO-DEFENDANT'S STATEMENT

Appellant contends that the trial court committed reversible error when it ruled that a statement previously given by Bland could not be admitted into evidence. The statement that Appellant refers to contains the following colloquy between Bland and a police investigator:

Q: Andre are you responsible for shooting Ontrain Sanders on Saturday 10-10-92 at approximately 12:15 a.m. in the Southbrook Apartments?

A: Yes.

Q: What did you shoot Ontrain Sanders with?

A: A silver chrome 9mm.

Q: How many times did you shoot Ontrain Sanders?

A: About four or five times in the leg.

. . . .

Q: Did anyone else do any shooting besides you?

A: No, sir.

Appellant claims that because Bland could have asserted his Fifth Amendment privilege against self-incrimination[1] and refused to testify at Appellant's trial, Bland was unavailable and his statement should have been admitted under Rule 804 of the Tennessee Rules of Evidence. Rule 804(a) states, in relevant part, that "'[u]navailability of a witness' includes situations in which the declarant is exempted by ruling of the court on the grounds of privilege from testifying concerning the subject matter of the declarant's statement." Tenn. R. Evid. 804(a)(1). This Court has stated that before a witness who refuses to testify pursuant to the Fifth Amendment can be declared unavailable under this rule, "the witness must appear in open court and invoke his or her privilege against self-incrimination and the trial court must rule that the testimony of the witness is in fact privileged." State v. James Roy McCoy, No. 01-C-019103-CR-00090, 1991 WL 242932, at *2 (Tenn. Crim. App., Nashville, Nov. 21, 1991) (citations omitted).

---

[1]The Fifth Amendment provides, in relevant part, that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend V.

In this case, Appellant's trial counsel did not subpoena or even talk to Bland before trial to determine whether Bland would agree to testify. Instead, Appellant's counsel sought to have Bland's counsel testify that if Bland was called as a witness, he would advise Bland to assert his privilege against self-incrimination. Appellant's counsel also sought to have Davenport's counsel testify that she had called Bland as a witness in Davenport's trial and he had refused to testify.[2] The trial court correctly ruled that this evidence was insufficient and if Appellant wanted Bland to be declared unavailable, Bland had to be present in court to assert his privilege against self-incrimination.

Appellant's counsel then proposed that he be allowed to call Bland on the telephone and ask him whether he would assert his privilege against self-incrimination if he was called to testify. The trial court correctly explained at least three times that Bland's unavailability could not be established over the telephone. Appellant's counsel then proposed that Bland be allowed to assert his privilege during a conference call. The court explained once again that this would be insufficient to establish unavailability.

At this point, Appellant's counsel asked the court to issue an instanter subpoena to have Bland transported from prison to the courthouse and the trial court complied with this request. After the subpoena was issued, Appellant's counsel contacted Bland by telephone and asked him whether he would testify. Bland apparently indicated that he would not testify under any circumstances. Appellant's counsel then asked the court whether Bland's statement would be

_____

[2]The record indicates that, in fact, Davenport's counsel did not call Bland as a witness because Davenport told her that Bland had stated that he would not testify in Davenport's trial.

-11-

admitted after Bland asserted his privilege against self-incrimination in court. The trial court then ruled, without explanation, that it would not admit the statement under Rule 804 even if Bland asserted his privilege in court. Appellant's counsel then stated that he did not see any reason to have Bland brought to court if the trial court would not admit the statement when Bland refused to testify. The trial court then stated, "I don't see any reason to bring him down here." Appellant's counsel then withdrew the subpoena and Bland was not transported to the courthouse.

The trial court clearly erred when it ruled that it would not admit Bland's statement even if Bland appeared in court and asserted his privilege against self-incrimination. The trial court had already ruled that if called as a witness, Bland could validly invoke his Fifth Amendment rights and refuse to testify. Thus, if Bland had in fact asserted his privilege against self-incrimination in court, he would clearly have been unavailable under Rule 804(a)(1). Bland's statement that he shot Ontrain Sanders and that in fact, he was the only one who fired any shots, was obviously a statement against his interest because it subjected him to criminal liability. Therefore, Bland's statement would have been admissible. See Tenn. R. Evid. 804(b)(3). Although the general rule is that a witness must appear in court and assert his or her privilege in order to be declared unavailable, Appellant cannot be faulted for withdrawing the subpoena to have Bland appear in court so that he could assert his privilege against self-incrimination when the trial court had essentially stated that it would be pointless to do so. It appears that ultimately, the reason why Appellant failed to comply with the general rule was because of the trial court's erroneous ruling.

We cannot say that the trial court's error in this case was harmless. The only evidence in this case about who actually shot Ontrain Sanders when he was hiding under the Ford pickup came from Appellant's testimony and his pre-trial statements to the police. Indeed, it appears that Bland was the only other person who could have testified about what really happened. If Bland's statement had been admitted, it would have corroborated Appellant's claim that Bland was the one who shot Ontrain Sanders and that Appellant had only confessed to the crime because he had been threatened. Under these circumstances, we hold that the trial court's error more probably than not affected the judgment of conviction. See Tenn. R. App. P. 36(b). We therefore reverse Appellant's conviction and remand this case for a new trial.

_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
PAUL G. SUMMERS, JUDGE


_____
JOSEPH M. TIPTON, JUDGE